UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| GREGORY A. TOBIN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:08-CV-17 CAS |
| | ) | |
| FREDERICK G. MEYER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

This diversity matter is before the Court on defendants Michael Chatzky and Chatzky and Associates' (collectively, the "Chatzky defendants") motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure. Plaintiffs oppose the motion to dismiss and the Chatzky defendants have filed a reply. For the following reasons, the Court will grant the Chatzky defendants' motion to dismiss for lack of personal jurisdiction.

**Background**.

Plaintiffs Gregory A. Tobin and Elizabeth A. Tobin, residents and citizens of Cape Girardeau, Missouri, filed this action asserting claims of professional negligence and breach of fiduciary duty against the defendants, who are attorneys and law firms. The plaintiffs allege in the First Amended Complaint that beginning in 1995 and continuing until 2000, they relied on the defendants' legal opinions, advice and counsel in connection with a strategy, known as the "Cornerstone Strategy," to legitimately reduce their tax liability. In 2004, however, the Internal Revenue Service ("IRS") began an investigation and examination of the plaintiffs and their income tax liabilities for the years 1999 and 2001, which were triggered by plaintiffs' participation in the Cornerstone Strategy tax shelter. The plaintiffs allege that they have been required to settle with the IRS and pay additional federal

taxes, penalties and interest for the years 1999 and 2001 in excess of $1,900,000, and pay the Missouri Department of Revenue approximately $225,000.

The plaintiffs allege that the defendants created and marketed the Cornerstone Strategy throughout the United States by public seminars, and that the Chatzky defendants participated in the drafting, development and sale of the Cornerstone Strategy. Plaintiffs allege that they purchased the Cornerstone Strategy tax shelter from a non-party entity called Global Strategies, which referred them to, inter alia, the Chatzky defendants for legal opinions concerning the legitimacy of the tax shelter, and that they relied upon those opinions in participating in and continuing to participate in the tax shelter.

The Chatzky defendants move to dismiss the action against them on the basis that the Court lacks personal jurisdiction over them.

**Personal Jurisdiction Standard**.

A party seeking to invoke the jurisdiction of a federal court bears the burden to establish that jurisdiction exists. Moog World Trade Corp. v. Bancomer, S.A., 90 F.3d 1382, 1384 (8th Cir. 1996). To survive a motion to dismiss, the plaintiff need only make a prima facie showing of jurisdiction. Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 561 (8th Cir. 2003) (citing Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996)). Where a defendant challenges the existence of personal jurisdiction through affidavits, documents or testimony, the plaintiff then has the burden of proving facts to support a reasonable inference that the defendant may be subjected to jurisdiction in the forum state. Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004)). In that situation, "The plaintiff's prima facie showing must be tested, not by the pleading alone, but by the affidavits and exhibits presented with the motions and

opposition thereto." Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1090 (8th Cir. 2008) (internal punctuation and quoted case omitted).

Because the Court relies on pleadings and affidavits, and did not conduct an evidentiary hearing, it must view the evidence in the light most favorable to the plaintiffs, and determine all factual conflicts in their favor. Digi-Tel, 89 F.3d at 522; Radaszewski by Radaszewski v. Telecom Corp., 981 F.2d 305, 309-10 (8th Cir. 1992), cert. denied, 508 U.S. 908 (1993).

In a diversity action such as this, "A federal court . . . may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004). Missouri construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the Due Process Clause. State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. 1984) (en banc). Accordingly, "Missouri courts have interpreted the words 'transaction of any business within this state' or 'commission of a tortious act within this state' broadly so as not to deny jurisdiction under § 506.500 in situations in which the due process clause would permit the assertion of personal jurisdiction." State ex rel. Newport v. Wiesman, 627 S.W.2d 874, 876 (Mo. 1982) (en banc); see Clune v. Alimak AB, 233 F.3d 538, 541 (8th Cir. 2000) (citing Wiesman), cert. denied sub nom Industrivarden Serv. AB v. Clune, 533 U.S. 929 (2001). As a result, the "critical factor" in the "analysis is whether the exercise of personal jurisdiction in this case comports with due process." Clune, 233 F.3d at 541; see Porter v. Berall, 293 F.3d 1073, 1075 (8th Cir. 2002).

In order to satisfy due process, a defendant must have sufficient minimum contacts with the forum state "such that 'maintenance of the suit does not offend traditional notions of fair play and

substantial justice.'" Dever, 380 F.3d at 1073 (quoting Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996)). In particular, there must be "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Moreover, in a case such as this which involves specific personal jurisdiction, "jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." Id. In other words, the cause of action must "'arise out of' or 'relate to' a defendant's activities within a state." Lakin v. Prudential Sec., Inc., 348 F.3d 704, 707 (8th Cir. 2003) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

In determining whether personal jurisdiction exists, the Court must consider (1) the nature and quality of the Chatzky defendants' contacts with Missouri; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of Missouri in providing a forum for its residents; and (5) the convenience of the parties. See Dever, 380 F.3d at 1073-74. Significant weight is afforded to the first three factors, and the other factors are secondary and not dispositive. Id. at 1076.

**Motion to Dismiss for Lack of Personal Jurisdiction**.

### A. The Chatzky Defendants' Arguments

The Chatzky defendants assert that, as a matter of law, they do not have sufficient minimum contacts with the State of Missouri to warrant this Court's exercise of personal jurisdiction over them. The Chatzky defendants submit the Declaration of defendant Michael Chatzky, signed under penalty of perjury, which states that (1) Chatzky is an attorney and the president of Chatzky and Associates, a Law Corporation, which has been sued in this action as "Chatzky and Associates;" (2)

4

Chatzky and Associates is a law firm located and incorporated in California; (3) Chatzky practices law in the State of California, and has never been licensed to practice law in Missouri; (4) Chatzky and Associates has never had an office in Missouri; (5) to Chatzky's knowledge, no one from Chatzky and Associates, including himself, has ever met either plaintiff, in Missouri or elsewhere, in connection with the plaintiffs' representation by Chatzky and Associates; (6) any communications between anyone at Chatzky and Associates, including Chatzky, and plaintiff Gregory Tobin took place solely by telephone, mail and facsimile; (7) no communications took place between anyone at Chatzky and Associates and plaintiff Elizabeth Tobin; (8) all of the legal services performed by Chatzky and Chatzky and Associates for plaintiff Gregory Tobin took place in California; and (9) no legal services were performed by Chatzky or Chatzky and Associates on behalf of plaintiff Elizabeth Tobin.

The Chatzky defendants assert that based on these facts, neither Chatzky individually nor Chatzky and Associates have sufficient minimum contacts with the State of Missouri to justify the exercise of personal jurisdiction over them. The Chatzky defendants assert that in similar circumstances, courts have held that non-resident attorneys, not licensed in Missouri and performing work at offices outside of Missouri, were not subject to personal jurisdiction in Missouri. The Chatzky defendants cite Porter v. Berall, 293 F.3d at 1076-77; State ex rel. Perkins Coie LLP v. Messina, 138 S.W.3d 815, 817 (Mo. Ct. App. 2004) ("Messina"), and State ex rel. Barnes v. Gerhard, 834 S.W.2d 902, 904 (Mo. Ct. App. 1992) ("Gerhard").

**B. Plaintiffs' Response**

The plaintiffs respond with the affidavit of plaintiff Gregory Tobin ("Tobin") which states that (1) Tobin "first encountered [the Chatzky defendants], in association with Harley Hunter, an agent

5

of Global Strategies, at a seminar in the State of Idaho in 1995;" (2) the Cornerstone Strategy sold and promoted by Global Strategies and Chatzky "promoted the use of off-shore employee leasing programs, income stabilization programs, foreign grantor trust and private annuities to avoid the imposition of Federal and Missouri Income Tax;" (3) Chatzky held himself out as an international tax advisor and expert in matters pertaining to federal income tax and estate planning; (4) Tobin engaged the services of Harley Hunter of Global Strategies and defendants Chatzky and Meyer at about the same time, and these three individuals and their entities worked in concert to establish Tobin's Cornerstone Strategy; (5) in 1995, Tobin owned the stock in two Missouri corporations, Missouri Surgery Center, Inc. and Midwest Physicians & Surgeons, P.C.; (6) as part of defendants' implementation of the Cornerstone Strategy, Chatzky formed two domestic corporations, Inter-Mountain Personnel Services, Inc. and Euro-Nevada Advisory Services, Inc., and two corporations chartered by the government of the Island of Nevis;[1] (7) Chatzky drafted resolutions and consents for both Missouri Surgery Center, Inc. and Midwest Physicians & Surgeons, P.C., and performed the legal work necessary to transfer the stock of Missouri Surgery Center, Inc. as part of the Cornerstone Strategy; (8) Chatzky "drafted numerous legal documents, some of which reference Missouri law as being applicable in the event of an issue or dispute," including but not limited to:

    a. Business Consultation Agreement between Missouri Surgery Center, Inc. and Inter-Mountain Personnel Services, Inc.;

    b. Agreement to Furnish Personal Services between Inter-Mountain Personnel Services, Inc. and Montrain Services, Ltd.;

    c. Subcontract between Euro-Nevada Advisory Services, Inc. and Montrain Services, Ltd.;

---

[1] Nevis is an island in the Caribbean, located near the end of the Lesser Antilles archipelago, approximately 220 miles southeast of Puerto Rico. Along with St. Kitts, Nevis forms the Federation of Saint Kitts and Nevis. http://en.wikipedia.org/wiki/Nevis (last visited July 15, 2008).

  d. Business Consultation Services and Income Stabilization Agreement between Midwest Physicians & Surgeons, P.C. and Montrain Services, Ltd.; and

  e. Employment Contract between Montrain Services, Ltd. and Gregory A. Tobin;

(9) the plaintiffs paid attorneys fees to the defendants Chatzky and Meyer in excess of $100,000 for establishment and maintenance of the Cornerstone Strategy, and other fees associated with the Cornerstone Strategy, estimated to be in excess of $300,000; (10) Chatzky has advertised and solicited his services and that of Global Strategies and defendant Meyer to "individuals of other states that include the State of California, Arizona, Alabama, Missouri and Virginia;" and (11) during Chatzky's representation of the plaintiffs, "they exchanged numerous telephone calls, letters and faxes" between October 1995 and October 2000, estimated to be in excess of 100, all of which were designed to either implement or maintain the Cornerstone Strategy.

  The plaintiffs argue that Chatzky's marketing and solicitation efforts were directed to citizens of numerous states, including Missouri, and thus he "transacted business" under the provisions of the Missouri long-arm statute, Mo. Rev. Stat. § 506.500.1(1) (2000). The plaintiffs assert that Chatzky engaged in the practice of law by drafting contracts, corporate resolutions and consents to transfer the stock of plaintiffs' Missouri corporations. Plaintiffs contend that Chatzky's contacts with Missouri were not "random, fortuitous or attenuated," because his involvement with plaintiffs in connection with the Cornerstone Strategy involved numerous transactions over a five-year period, and resulted in Chatzky and the other defendants receiving over $100,000 in legal fees and over $300,000 in other fees from the plaintiffs.

  Plaintiffs attempt to distinguish the cases cited by the Chatzky defendants on the basis that Porter, Messina and Gerhard all involved non-resident attorneys practicing law on behalf of Missouri residents in another state. In contrast, plaintiffs assert that the Chatzky defendants represented the

7

plaintiffs and their Missouri corporations in the State of Missouri, whether or not Michael Chatzky was licensed here, and derived substantial fees from that practice. Plaintiffs contend that the numerous letters, faxes and phone calls must be considered along with Chatzky's "other concerted activities" over a five-year period of "availing himself of the benefits of practicing law in the State of Missouri." Pls.' Mem. Opp. at 9. Finally, plaintiffs assert that the following facts, in particular, demonstrate the existence of personal jurisdiction: (1) the contracts Chatzky drafted for plaintiffs specified that Missouri law was applicable in the event of a dispute, and (2) Chatzky performed corporate work for plaintiffs including basic resolutions, certification, and the transfer of stock in Missouri corporations. Plaintiffs do not cite any cases in support of their contentions.

With respect to the due process analysis, plaintiffs assert that the Chatzky defendants should reasonably anticipate being haled into court in the State of Missouri for "concerted activities involving the practice of law in the State of Missouri" over a five-year period, including providing federal income tax advice and drafting numerous documents for plaintiffs and their Missouri corporations. Plaintiffs further assert that Chatzky was soliciting clients throughout the United States for the Cornerstone Strategy, and it would be disingenuous for him to claim that he could not reasonably anticipate being haled into court here, where he collected substantial fees for the practice of law.

**C. The Chatzky Defendants' Reply**

The Chatzky defendants reply that the Court does not have jurisdiction over them because (1) their alleged acts or inaction did not arise out of an activity covered by the Missouri long-arm statute, and (2) they do not have sufficient minimum contacts with Missouri to satisfy due process. The Chatzky defendants assert that although the facts are to viewed in the light most favorable to the plaintiff in determining the existence of personal jurisdiction, there must be evidence upon which a prima facie showing of jurisdiction may be found, citing Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir. 1977), and such evidence is lacking.

The Chatzky defendants state that the Tobin Affidavit offers vague and general allegations and conclusions, but does not state specific facts necessary to establish personal jurisdiction and contains numerous misstatements of fact, although the defendants assert that even if these misstatements are taken as true, they do not establish personal jurisdiction. The Chatzky defendants state that they have not transacted business in Missouri, but were merely retained by plaintiffs to provide legal services, specifically, "the establishment of a business revenue and expense stabilization program containing a foreign deferred compensation." The Chatzky defendants reiterate their lack of contacts with Missouri as discussed above, and state that the Eighth Circuit has interpreted the transaction of business subsection of the Missouri long-arm statute to require more than correspondence. In sum, the Chatzky defendants contend that their communications with Gregory Tobin in Missouri by mail, telephone and facsimile are insufficient to establish personal jurisdiction under the long-arm statute.

In specific response to the Tobin Affidavit, Michael Chatzky submits a second Declaration which states in part that the two Nevada corporations Mr. Tobin avers were formed for plaintiffs

9

were actually formed before Mr. Tobin alleges that he first came into contact with the defendants, and neither were formed by the Chatzky defendants. Attached to the second Chatzky Declaration are certified copies of Articles of Incorporation which show that Inter-Mountain Personnel Services, Inc. was formed in December 1994 by Cheryl Mall, and Euro-Nevada Advisory Services, Inc., was formed in January 1992 by Lewis E. Laughlin. Chatzky declares that neither Mall nor Laughlin were ever employees of Chatzky and Associates.

The second Chatzky Declaration also disputes the Tobin Affidavit regarding the relevant agreements' provisions for the application of Missouri law to govern in the event of a dispute. Chatzky asserts that Missouri law does not govern the interpretation of the legal documents cited in the Tobin Affidavit, and only applies in limited circumstances in a few of the agreements. Specifically, Chatzky states that the following law applies with respect to each of the following agreements:

> a. Business Consultation Agreement between Missouri Surgery Center, Inc. and Inter-Mountain Personnel Services, Inc. -- does not mention Missouri law; paragraph 10 states that the Agreement will be governed by Nevada law;
>
> b. Agreement to Furnish Personnel Services between Inter-Mountain Personnel Services, Inc. and Montrain Services, Ltd. -- does not mention Missouri law; paragraph 24 states that the Agreement will be governed by Nevada law;
>
> c. Subcontract between Euro-Nevada Advisory Services, Inc. and Montrain Services, Ltd. -- paragraph 19 states that the Agreement is to be governed by and interpreted in accordance with the law of the Republic of Ireland, except that issues or disputes relating to the practice [of medicine] or the regulation thereof are to be governed by Missouri law;[2]

---

[2] The Subcontract, Defs.' Ex. G, omits the words "of medicine" that appear in brackets above following the word "practice." The Business Consultation Services and Income Stabilization Agreement, Defs.' Ex. H, contains a similar provision but includes the words "of medicine" which are missing from the Subcontract. The second Chatzky Declaration describes both of these Agreements as referring to Missouri law only with respect to issues relating to the practice of medicine or the regulation thereof. The plaintiffs did not seek leave to file a sur-response or

d. Business Consultation Services and Income Stabilization Agreement between Midwest Physicians & Surgeons, P.C. and Montrain Services, Ltd. -- paragraph 17 states that the Agreement is to be governed by and interpreted in accordance with the law of the Republic of Ireland, except that issues or disputes relating to the practice of medicine or the regulation thereof are to be governed by Missouri law;

e. Employment Contract between Montrain Services, Ltd. and Gregory A. Tobin -- does not mention Missouri law; paragraph 23 states that the Agreement is to be governed by and interpreted solely in accordance with the law of the Republic of Ireland.

A copy of each Agreement is attached to the second Chatzky Declaration.

With respect to the issue of due process, the Chatzky defendants assert that the drafting of documents creating the two Nevada corporations and the various agreements listed above do not provide any evidence of their contacts with Missouri. The Chatzky defendants also note that the Engagement Agreement between themselves and Gregory Tobin provides that its interpretation and enforcement shall be under California law. See Ex. J to second Chatzky Decl.

The Chatzky defendants also state that the Tobin Affidavit avers, without a factual basis, that they and others marketed the Cornerstone Strategy generally throughout the United States. The Chatzky defendants note that Mr. Tobin does not claim he met them or became aware of their services in Missouri, but rather avers that he first "encountered" them in Idaho; and further does not state that the Chatzky defendants actually advertised services in Missouri. Michael Chatzky states in his second Declaration that he never advertised services in Missouri.

The Chatzky defendants assert that the Porter case is controlling and on point. The defendants assert that in Porter, the defendants were Connecticut attorneys hired to advise plaintiffs

---

otherwise disagree with the Chatzky defendants' description of the choice-of-law provisions in the various Agreements. The Court assumes for purposes of this opinion that the Subcontract's choice-of-law provision with respect to Missouri law was intended to relate only to issues concerning the practice of medicine or the regulation thereof.

on Connecticut law in connection with a trust fund and several trusts which were registered in Missouri. 293 F.3d at 1075. The Eighth Circuit held that the numerous phone calls and letters exchanged between Connecticut and Missouri were insufficient to satisfy the first two factors of the due process analysis. Id. at 1076. Although the plaintiffs presented additional evidence of contacts between the defendants and the State of Missouri, specifically that the defendants used an appointed agent to transact business in Missouri, certain documents were executed in Missouri that required a plaintiff's signature, and the defendants sought to solicit further business in Missouri from one of the plaintiffs in connection with the trusts, the Eighth Circuit found this additional evidence was insufficient to justify the exercise of personal jurisdiction. Id. at 1076. The Court explained further that the defendants were not licensed to practice law in Missouri, they did not maintain offices in Missouri, and did not solicit business in Missouri. Id. at 1077. They could not have foreseen being haled into court in Missouri, and therefore, the district court's dismissal of the case for lack of personal jurisdiction was proper. Id.

The Chatzky defendants argue that they had even less contact with Missouri than the Porter defendants. The Chatzky defendants assert that plaintiffs in this case retained them, and like the defendants in Porter, defendant Michael Chatzky is not licensed to practice law in Missouri, the Chatzky defendants have never maintained an office in Missouri and have never solicited business in Missouri. The Chatzky defendants' state that their contacts with Missouri were limited to telephone, mail, and facsimile communications between the Chatzky defendants in California and plaintiff Gregory Tobin in Missouri. They contend that under Porter, such communications are not sufficient to satisfy the due process requirements for personal jurisdiction.

**Discussion**.

Although the parties address the issue whether or not the Chatzky defendants' actions can be considered the transaction of business within the meaning of the Missouri long-arm statute, the Court need only determine whether the exercise of jurisdiction over the Chatzky defendants would comport with due process. Clune, 233 F.3d at 541.

The Court agrees with the Chatzky defendants that the Eighth Circuit's Porter decision is controlling, and their description of the case is accurate. The plaintiffs' attempt to distinguish Porter is not persuasive. The Connecticut attorneys in Porter were performing legal work in Connecticut on behalf of the Porters' Missouri trusts, in the same way that California attorney Chatzky and his firm were performing legal work in California on behalf of the plaintiffs and their Missouri corporations. There is no allegation that the Chatzky defendants have an office or agent in Missouri, or that Michael Chatzky has ever been to Missouri. Although it is unclear whether Gregory Tobin avers that he met Michael Chatzky or merely someone acting "in association with" Chatzky, it is clear that the meeting took place in Idaho. Tobin Aff., ¶ 2. The vague and conclusory averment that Mr. Tobin "is aware that . . . Chatzky has advertised and solicited his services . . . to individuals of other states that include . . . Missouri," id., ¶ 11, is not supported by any facts and is entitled to little weight in the analysis.

Plaintiffs' assertion that Chatzky was "practicing law in Missouri" is not supported by the evidence presented or by citation to any legal authority. Plaintiffs have also not cited any cases to support their assertion that the number of letters, calls and faxes involved in their relationship with the Chatzky defendants, or the length of time that the relationship extended, serve to distinguish this case from Porter. It is well established that "[a]lthough letters and faxes may be used to support the

13

exercise of personal jurisdiction, they do not themselves establish jurisdiction." Digi-Tel, 89 F.3d at 523 (citing Wessels, Arnold & Henderson v. National Med. Waste, Inc., 65 F.3d 1427, 1433 (8th Cir. 1995)).

With respect to evidence concerning the choice-of-law provisions in the relevant Agreements, "although a choice-of-law provision may be considered for jurisdictional purposes as it may 'reinforce the defendant's deliberate affiliation with the forum state and the reasonable foreseeability of possible litigation there,' it is insufficient in itself to confer jurisdiction." Digi-Tel, 89 F.3d at 523 (quoting Burger King, 471 U.S. at 482) (internal punctuation and brackets omitted). The Chatzky defendants have established, contrary to the Tobin Affidavit's averments, that none of the five relevant Agreements provide they are to be generally governed by Missouri law. Only two of the five Agreements even mention Missouri law. Those two Agreements specify that they are to be governed by the law of the Republic of Ireland, except that issues or disputes relating to the practice of medicine or the regulation thereof are to be governed by Missouri law. The instant dispute does not relate to the practice of medicine or the regulation thereof. The choice-of-law evidence is therefore not persuasive. Further, even if the Agreements did provide that they were to be governed generally by Missouri law, such evidence would not be sufficient to confer personal jurisdiction. See Digi-Tel, 89 F.3d at 523

The Court therefore concludes that plaintiffs have failed to establish the first two factors of the due process analysis. There is no evidence that the Chatzky defendants purposely availed themselves of the privilege of conduct activities within Missouri, invoking the benefits and protections of its laws. See Hanson, 357 U.S. at 253. With respect to the third factor, the cause of action is related to the contacts, but the contacts are not constitutionally sufficient and do not relate to the

14

defendants' activities *within* the state. See Lakin, 348 F.3d at 707.  As to the fourth factor, the State of Missouri certainly has an interest in providing a forum for its citizens, but this factor is less important and is not determinative.  Porter, 293 F.3d at 1076.  Finally, the last factor, convenience of the parties, is in balance, as the plaintiffs are in Missouri and the Chatzky defendants are in California.

In sum, the evidence before the Court is insufficient to justify the exercise of personal jurisdiction over the Chatzky defendants, and plaintiffs have failed to show that these defendants should have foreseen being haled into court in Missouri based on their actions in California.

**Conclusion**.

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over defendants Michael Chatzky and Chatzky and Associates, and will grant these defendants' motion to dismiss for lack of personal jurisdiction.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Michael Chatzky and Chatzky and Associates' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., is **GRANTED**.  [Doc. 34]

An appropriate order of partial dismissal will accompany this memorandum and order.

                                                                       **CHARLES A. SHAW**
                                                                       **UNITED STATES DISTRICT JUDGE**

Dated this   17th   day of July, 2008.